IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARTIN LYONS,

       Plaintiff,

v.

NATHAN ATTEBURY, KEVIN
JOHNSON, L. HOLLIS, LT. WISE, S.
SLUNAKER, JENIELLE FITZJARRALD,
A. CASOLORI, and A. GONZALEZ,[1]

       Defendants.

Case No. 24-cv-106-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Martin Lyons, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. In the Complaint, Lyons alleges that the defendants retaliated against him by issuing false disciplinary tickets and denied his due process rights in disciplinary hearings. He alleges claims under the First and Fourteenth Amendments.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

---

[1] Lyons recently submitted a letter indicating that Defendant Jenielle Fitzgerald's proper name is Jenielle Fitzjarrald (Doc. 11). Thus, the Clerk of Court is DIRECTED to CORRECT the docket to reflect defendant's updated last name.

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In the Complaint, Lyons makes the following allegations: On May 9, 2022, while at Lawrence Correctional Center, Lyons spoke to Correctional Officer ("C/O") Josh Slunaker and requested a crisis team (Doc. 1, p. 3). Lyons alleges that he needed a crisis team because his prior requests to speak to mental health went unanswered for three weeks and his prison job had recently been taken away from him (*Id*.). Mental health staff were called; Lyons spoke to them and returned to his cell (*Id*.). He was subsequently walked to segregation on a fabricated disciplinary report for improperly calling a crisis team.

On May 10, 2022, C/O West delivered a disciplinary ticket about the incident (*Id*.). Lyons informed West that he had witnesses to the incident who would testify. Lyons wrote on the form requesting that inmates Diaz and Harris be called as witnesses to the incident. Lyons also indicated on the written form that he wanted the video footage of the dayroom where the incident took place viewed as part of the disciplinary hearing (*Id*.). In response, West checked the box on the form indicating that Lyons refused to sign the ticket (*Id*.).

On May 18, 2022, Lyons went before the adjustment committee for his disciplinary hearing; the adjustment committee included Nathan Attebury and Kevin Johnson (*Id*. at p. 4). He again requested to call witnesses and view the camera footage (*Id*.). He was

found guilty of the charges but let out of segregation after the hearing (*Id*.). The Final Summary Report from the hearing indicates that no witnesses were requested (*Id*. at p. 10). Lyons received seven days in segregation as punishment for the charges (*Id*.). Lyons grieved the disciplinary charges and ruling but did not receive any relief (*Id*. at p. 4).

On July 20, 2022, Lyons was in the law library discussing a civil complaint with another inmate. Counselor Jenielle Fitzjarrald walked by with another inmate and entered the library supervisor's office (Doc. 1, p. 4). After Fitzjarrald left the library, a lieutenant pulled Lyons from the library and questioned Lyons about threats he allegedly made towards Fitzjarrald (*Id*.). Lyons denied the accusations, and the law librarian stated that she did not see or hear any threats from Lyons (*Id*.). Lyons was transported to segregation and issued a disciplinary ticket for threatening Fitzjarrald (*Id*. at pp. 4, 12). He alleges that the disciplinary ticket was a complete fabrication and included threats that were impossible to make without someone overhearing the threats (*Id*. at p. 4). Lyons again requested witnesses, including the inmate he was speaking to at the time (*Id*.). Committee members Attebury and Johnson again found Lyons guilty of the charges. Lyons's inmate witness would have testified that he did not hear anything, and the law librarian testified that she did not hear or see the interaction between Lyons and Fitzjarrald (*Id*.). Despite lacking any evidence to support Fitzjarrald's allegations, Lyons was found guilty of the charges (*Id*. at pp. 4, 21). He again received seven days in segregation (*Id*. at p. 21). Lyons filed a grievance asking for camera footage from the

library, but his request was ignored (*Id.* at p. 4). He also wrote a grievance claiming that the committee members were impartial and bias (*Id.* at p. 5).

On September 29, 2022, Lieutenant Wise approached Lyons's cell and directed him to cuff up, noting that Lyons had written his last grievance at Lawrence (*Id.* at p. 5). Lyons was transferred to segregation on investigative status and was not told the reason for the investigation. Instead, he alleges the move was in retaliation for writing grievances against staff (*Id.*). He was placed in a shower, and Wise directed A. Casolori to write a ticket against Lyons that would stick in order to get him transferred to another prison (*Id.*). On September 30, 2022, Lyons received an investigation ticket from A. Gonzalez. He also received a disciplinary ticket from Casolori for threats (*Id.*). The ticket listed Wise and S. Slunaker as witnesses (*Id.* at p. 7). He contends both tickets were fabricated and in retaliation for writing grievances. Lyons also contends the investigation ticket was inappropriate because Gonzalez failed to follow Illinois Administrative Code requiring Gonzalez to interview Lyons (*Id.* at p. 5). The date on the ticket was also incorrect (*Id.*). Lyons wrote grievances about the tickets, but the grievances went unanswered.

On October 5, 2022, Lyons was escorted to his disciplinary hearing by L. Hollis (*Id.* at p. 6). He handed Nathan Attebury and Kevin Johnson a written statement objecting to them being on the committee due to a conflict of interest. Both committee members had previously found him guilty on other charges (*Id.*). After the hearing, Attebury delivered a refusal form to Lyons's cell alleging that Lyons refused to attend the hearing (*Id.*). The form listed L. Hollis as a witness (*Id.*). Lyons wrote grievances about the hearing, but the grievances went unanswered (*Id.*). Lyons alleges that he was never properly interviewed

4

while on investigative status, as required by Illinois Administrative Code (*Id.*). Although Gonzalez interviewed other inmates on investigative status, he never interviewed Lyons.

On October 22, 2022, Lyons was transferred from Lawrence to Menard Correctional Center (*Id.* at p. 6). He was transferred despite being on a medical hold (*Id.*). He alleges the disciplinary tickets and transfer were in retaliation for writing grievances against staff at Lawrence (*Id.*).

### Preliminary Dismissals

Lyons fails to state a claim against Josh Slunaker for issuing an allegedly false disciplinary ticket. Although he alleges that Slunaker issued a fabricated disciplinary ticket after Lyons spoke with a crisis team, the receipt of a false disciplinary ticket does not amount to a due process violation. *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted); *see also Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). Nor has Lyons alleged that Slunaker issued the disciplinary ticket in retaliation for Lyons participating in a First Amendment protected activity. Lyons does not allege that Slunaker was reacting to any grievances or complaints by Lyons. Further, Josh Slunaker is not identified as a defendant in the case caption. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Only S. Slunaker, a family member of Josh Slunaker, is listed as a defendant because he was listed as a witness on an allegedly false disciplinary ticket. Because Lyons fails to identify Josh Slunaker in the case caption and fails to state a claim against him, any claim against Josh Slunaker is **DISMISSED without prejudice**.

5

Lyons also fails to state a claim against S. Slunaker. He alleges that S. Slunaker was listed as a witness on a fabricated disciplinary ticket (Doc. 1, pp. 7, 33). Although Lyons alleges that S. Slunaker contributed to the false disciplinary ticket by being listed on the ticket, there are no allegations to suggest that he was involved in the false disciplinary ticket. Lyons does not allege that S. Slunaker wrote the ticket or testified against him. Lyons acknowledges that Casalori wrote the ticket, and there is no indication that S. Slunaker had any personal involvement in the issuance of the ticket. Thus, any claim against S. Slunaker is **DISMISSED without prejudice**.

Finally, Lyons fails to state a claim against A. Gonzalez. He alleges that A. Gonzalez issued a false investigation ticket and failed to follow the requirements of Illinois Administrative Code 504.620 and 504.630. He alleges that Gonzalez wrote the wrong date on the ticket and failed to properly interview him, all in violation of the administrative code. But the violation of state law or administrative code fails to state a claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("[Section] 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and … practices."). There is no indication that Gonzalez issued the ticket as an act of retaliation for some protected activity of Lyons. Instead, Lyons alleges that Gonzalez's actions merely "contributed" to the violations by other defendants (Doc. 1, p. 8). But he fails to allege that Gonzalez retaliated against Lyons. Thus, any claim against Gonzalez is also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide

the *pro se* action into the following counts:

> **Count 1:** **Fourteenth Amendment procedural due process claim against Nathan Attebury and Kevin Johnson for refusing to call Lyons's witnesses or view the video tape of the May 9, 2022 incident in the dayroom.**
>
> **Count 2:** **First Amendment retaliation claim against Fitzjarrald for issuing Lyons a false disciplinary ticket in the law library.**
>
> **Count 3:** **Fourteenth Amendment due process claim against Nathan Attebury and Kevin Johnson for finding Lyons guilty of the incident in the law library without evidence.**
>
> **Count 4:** **First Amendment retaliation claim against Lieutenant Wise and A. Casolori for issuing a false disciplinary ticket in response to Lyons filing grievances.**
>
> **Count 5:** **Fourteenth Amendment procedural due process claim against Nathan Attebury and Kevin Johnson for finding Lyons guilty of the disciplinary ticket.**
>
> **Count 6:** **Fourteenth Amendment substantive due process claim against Nathan Attebury, Kevin Johnson, and L. Hollis for falsifying Lyons's failure to appear at the disciplinary hearing and finding him guilty of the disciplinary ticket.**

The parties and the Court will use these designations in all future pleadings and

orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that**

**is mentioned in the Complaint but not addressed in this Order should be considered**

dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

**Count 1**

Lyons fails to state a claim for due process violations related to the disciplinary ticket issued by Slunaker. As to Lyons's procedural due process claim on an allegedly false disciplinary ticket, the Court undertakes a two-part analysis. *Isby v. Brown,* 856 F.3d 508, 524 (7th Cir. 2017). The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)). Lyons fails to allege that he was deprived of a protected liberty interest. Although Lyons was found guilty of the disciplinary report issued by Slunaker, he received only seven days in segregation (Doc. 1, p. 10). Such a small stint in segregation does not rise to the level of an atypical and significant hardship. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997) (two months not enough on its own); *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (noting that 30 days is not enough). Thus, Lyons fails to state a claim in Count 1.

**Count 2**

At this stage, however, Lyons states a claim regarding the disciplinary ticket issued by Jenielle Fitzjarrald. Lyons alleges that she issued a fabricated disciplinary ticket

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

against him and that the ticket was in response to a grievance Lyons wrote about her (Doc. 1, p. 8). He also alleges that he had several family members call her to complain that she was not providing Lyons with clinical services. He further alleges that she wrote the ticket after he wrote the grievance, suggesting her actions were in retaliation for Lyons's protected activity (*Id*.). Thus, he adequately states a claim in Count 2 against Fitzjarrald.

**Count 3**

Lyons fails to state a due process claim against Attebury and Johnson in relation to the disciplinary ticket issued by Fitzjarrald (Doc. 1, p. 21). Lyons only received seven days in segregation and, as previously stated, the short stay in segregation does not amount to a deprivation of a liberty interest that would trigger due process protections. Thus, Count 3 against Attebury and Johnson is **DISMISSED without prejudice**.

**Count 4**

Lyons also states a claim against Lieutenant Wise and A. Casolori for the allegedly false disciplinary ticket issued on September 29, 2022. Lyons alleges that after writing grievances about his issues with the impartiality of the adjustment committee and grievance officials, Lieutenant Wise placed him in segregation. Wise allegedly told Lyons that he had written his last grievance (Doc. 1, p. 5). He also allegedly told A. Casolori to write a disciplinary ticket against Lyons that would "stick" (*Id*.). Lyons adequately alleges that both officers wrote a disciplinary ticket in retaliation for grievances written against staff. That is enough at this stage to state a claim.

**Count 5**

In addition to the false disciplinary ticket, Lyons alleges that he was denied due process protections in the disciplinary hearing. But to the extent that he raises a procedural due process claim, he fails to state a claim. Lyons fails to allege that he was deprived of a protected liberty interest because he fails to indicate what punishment, if any, he received from the ticket. Nor has he attached the final summary report from the disciplinary hearing. He only states that his security level increased, but a prisoner does not have a protected liberty interest in his classification. *DeTomaso v. McGinnis,* 970 F.2d 211, 212 (7th Cir. 1992) ("prisoners possess neither liberty nor property in their classifications and prison assignments"). Thus, to the extent that he seeks to raise a procedural due process claim, the claim is **DISMISSED without prejudice**.

**Count 6**

In addition to a procedural due process claim, Lyons alleges that the ticket, disciplinary proceedings, and his ultimate transfer to Menard violated his substantive due process rights because he was denied exculpatory evidence and witnesses (Doc. 1, p. 6). Although a false disciplinary report could amount to a substantive due process violation "if the consequences are sufficiently severe," Lyons fails to provide any details as to the consequences that he suffered as a result of the disciplinary ticket. *See Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006); *Black v. Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994) ("Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right."). He only alleges that he was transferred to Menard and his security

10

level increased, but those consequences are not sufficiently severe and do not amount to a protectible liberty interest as previously stated.[3] Thus, Count 6 is also **DISMISSED without prejudice**.

**Disposition**

For the reasons stated above, Count 2 shall proceed against Jenielle Fitzjarrald, and Count 4 shall proceed against Lieutenant Wise and A. Casolori. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Jenielle Fitzjarrald, Lieutenant Wise, and A. Casolori: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Lyons. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Lyons, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending

---

[3] Lyons also has not alleged that actions of Attebury and Hollis, falsely claiming that Lyons failed to appear at the disciplinary hearing, was an act of retaliation or in response to any grievance written by Lyons.

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Lyons, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Lyons is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED:  April 11, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**