IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARTIN LYONS,<br><br>      **Plaintiff,**<br><br>v.<br><br>LT. WISE, ADAM CASOLORI,<br>and TENIELLE FITZJARRALD,<br><br>      **Defendants.** | Case No. 24-cv-106-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Martin Lyons, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. Lyons alleges that Defendants retaliated against him for writing grievances by issuing false disciplinary tickets against him, in violation of the First Amendment.

This matter is currently before the Court on a motion for summary judgment filed by Defendants Lieutenant ("Lt.") Wise, Adam Casolori, and Tenielle Fitzjarrald (Docs. 49, 50). Lyons filed a response in opposition to the motion (Doc. 53). Defendants filed a reply brief (Doc. 57).

1

## BACKGROUND

### A. Procedural Background

On January 16, 2024, Lyons filed a Complaint alleging that Defendants retaliated against him by issuing false disciplinary tickets (Doc. 1). Lyons alleged that on July 20, 2022, he was in the law library speaking about a case with another inmate (Doc. 13, p. 3). Counselor Tenielle Fitzjarrald walked by him and entered the library supervisor's office. After she left the library, a correctional officer approached Lyons and questioned him about threats he allegedly made toward Fitzjarrald (*Id.*). Although Lyons denied the accusations and the prison librarian agreed that she did not see or hear any threats, Lyons was issued a disciplinary ticket and sent to segregation for threatening Fitzjarrald (*Id.*). He alleged the charge was in retaliation for grievances and complaints that he was pursuing at the time.

Lyons also alleged that he received another disciplinary ticket in retaliation for his grievances. On September 29, 2022, Lt. Wise directed Lyons to cuff up, noting that he had written his last grievance at the prison (Doc. 13, p. 4). Lyons was again transferred to segregation on investigative status (*Id.*). He was placed in a shower, and Lt. Wise directed Adam Casolori to write a ticket against Lyons that would result in him being transferred to another prison (*Id.*). He received a disciplinary ticket for threats (*Id.*). In October, he was then transferred to Menard Correctional Center.

After review of the Complaint pursuant to 28 U.S.C. § 1915A, Lyons was allowed to proceed on the following two counts:

>    Count 2:   First Amendment retaliation claim against Fitzjarrald for issuing Lyons a false disciplinary ticket in the law library.
>
>    Count 4:   First Amendment retaliation claim against Lt. Wise and Adam Casolori for issuing a false disciplinary ticket in response to Lyons filing grievances.

(Doc. 13, pp. 7-9).

Lyons submitted numerous grievances regarding his retaliation claims.[1]

> **July 20, 2022 Grievance (#07-22-197):** On July 20, Lyons submitted a grievance stating that, while in the library, he spoke to Counselor Fitzjarrald about whether she received his grievances (Doc. 50-1, pp. 3-4).[2] Lyons alleged that Fitzjarrald lied and said she had not received the grievances even though he saw her retrieve items from the grievance box (*Id.*). He alleged that she then told a lieutenant in the law library that Lyons threatened her, and Lyons received a disciplinary ticket in response (*Id.* at p. 4). He alleged the ticket was in retaliation for numerous grievances written against Fitzjarrald (*Id.*). On July 29, 2022, the counselor responded to the grievance, indicating that Fitzjarrald collects grievance mail daily and responds accordingly (*Id.* at p. 3). On August 29, 2022, the grievance officer received the grievance and denied the grievance on October 18, 2022, as unsubstantiated (*Id.* at p. 1). The grievance officer noted that Lyons failed to provide a specific incident at issue in the grievance (*Id.*). Defendants, pointing to a chart in Exhibit C, note that the grievance was returned to Lyons on October 27, 2022 (Doc. 50-3).[3] Lyons's cumulative counseling

---

[1] Lyons identified additional grievances in his Complaint that were relevant only to claims and defendants that were subsequently dismissed. Defendants also identify several grievances that identify dismissed defendants. The only grievances listed are those grievances that include allegations against the named defendants for the remaining claims in this lawsuit.

[2] Defendants fail to indicate the origins of Exhibit A, but the exhibit appears to include numerous grievances submitted by Lyons.

[3] To support the date the grievance was returned to Lyons, Defendants cite to a chart that appears to list grievances received by the prison. But Defendants fail to provide any affidavit, testimony, or other explanation for the nature of this chart and what it purports to show. In fact, they fail to provide *any* supporting explanation about the origin of this document including how the document is maintained, who inputs information into the document, and why the document is sufficient to prove that the grievance was returned to Lyons. Further, the chart, in its current form, is indecipherable. Although Grievance # 07-22-197 is listed on the second page of the chart noting that it was received on July 22, 2022, and grieved staff conduct (Doc. 50-3, p. 2), the location of other aspects of the chart, including information about the date the grievance was returned from

summary notes that numerous grievances, including Grievance #-07-22-197, were forwarded to Lyons through the mail on January 17, 2023 (Doc. 57-2, p. 10).[4]

**July 21, 2022 Grievance (#08-22-106):** Lyons's July 21 grievance also complained about the encounter with Fitzjarrald in the law library (Doc. 50-1, pp. 15-16). Lyons again alleged that he inquired about the status of request slips, but Fitzjarrald replied that she was not in the library to discuss any issues with him. She then entered the librarian's office. Ten minutes after Fitzjarrald left the library, a lieutenant reported to Lyons that Fitzjarrald claimed he had threatened her (*Id.* at p. 16). Lyons later received a disciplinary ticket for the event in retaliation for grievances he previously wrote against her (*Id.*). On August 17, 2022, the grievance officer received the grievance (*Id.* at p. 13). On October 14, 2022, he reviewed the grievance finding it to be a duplicate of Grievance # 08-22-112 (*Id.*). The Chief Administrative Officer ("CAO") concurred with the finding (*Id.*). Defendants point to Exhibit C as proof that the grievance was returned on October 17, 2022 (Doc. 50-3). Lyons's cumulative counseling summary notes that the grievance was one of the grievances returned to Lyons through the mail on January 17, 2023 (Doc. 57-2, p. 10).

**July 24, 2022 Grievance (#8-22-023):** Lyons's July 24 grievance was about Fitzjarrald's receipt of his grievances prior to the issuance of the disciplinary ticket against him (Doc. 50-1, pp. 11-12). Lyons alleged that on July 18 or 19, he observed Fitzjarrald pull his grievances from the grievance box (*Id.* at p. 11). Lyons alleged that her actions were improper because the grievance officer is supposed to retrieve the grievances and stamp them before forwarding the grievance to the counselor (*Id.* at pp. 11-12). Lyons's grievance also noted that Fitzjarrald wrote a fabricated disciplinary report against him on July 20, 2022 (*Id.* at p. 12). This grievance was marked received on August 1, 2022, and on August 4, 2022, the counselor noted that counselors were collecting grievances as directed by an administrative directive (*Id.* at p. 11). On October 18, 2022, the grievance office reviewed

---

the counselor, the date the grievance was reviewed by the grievance officer, and the date it was returned to Lyons, is not noted by Defendants, nor is the Court capable of locating this information on the chart (*See* Doc. 50-3, pp. 6-9).

[4] Defendants also fail to explain this document. Instead, they merely identify the Cumulative Counseling Summary in their reply without providing the origins of this document or what it purports to show (Doc. 57, p. 2). Although the Court is familiar with the Cumulative Counseling Summary from the use in other *Pavey* proceedings, Defendants have not properly established the authenticity of the document in this case. Nor have they provided a supporting explanation to establish how the document is maintained or who authors it.

the grievance and also noted that Fitzjarrald was designated as a counselor and grievance officer and could collect grievances from the grievance box (*Id.* at p. 9). The CAO concurred with the determination (*Id.*). Defendants note that per the chart in Exhibit C, the grievance was returned to Lyons on October 27, 2022 (Doc. 50-3). Per Lyons's cumulative counseling summary, on January 17, 2023, Lyons's grievance was returned to him through the mail (Doc. 57-2, p. 10).

**July 27, 2022 Grievance (#08-22-112):** Lyons grieved the adjustment committee hearing regarding the threats to Fitzjarrald, alleging that the committee denied his request for a continuance to obtain papers that would prove he did not threaten her (Doc. 50-1, p. 7). The committee also failed to call Lyons's witnesses (*Id.* at p. 8). On August 17, 2022, the grievance officer received the grievance (*Id.* at p. 5). On October 13, 2022, the grievance officer denied the grievance and the CAO concurred on October 14, 2022 (*Id.*). Defendants maintain that the grievance was returned to Lyons on October 27, 2022 (Doc. 50-3). The cumulative counseling summary notes that the grievance was forwarded to Lyons through the mail on January 17, 2023 (Doc. 57-2, p. 10).

**October 3, 2022 Grievance:** This grievance, attached to Lyons's Complaint, alleges that on September 29, 2022, he was placed in the shower by staff (Doc. 1, pp. 34-35). He yelled at another inmate, indicating that he needed to write grievances about all of the constitutional violations he was experiencing at Lawrence (*Id.* at p. 34). He alleges that Adam Casolori and Lt. Wise then wrote a disciplinary ticket against him, alleging that he made threatening statements to staff (*Id.*). Defendants note that there is no record of this grievance in the Administrative Review Board's records, nor does the grievance have a grievance number or receipt date (Doc. 1 at p. 34; Docs. 50-1, 50-2). In his response, Lyons argues that this grievance was a handwritten copy of one the grievances he submitted while at Lawrence. He alleges that he did not have access to his personal property box at the time and he handwrote copies to attach to his Complaint (Doc. 53, p. 1).

**October 3, 2022 Grievance (#10-22-065):** A nearly identical grievance regarding the disciplinary ticket issued by Casolori and Lt. Wise was received on October 11, 2022 (Doc. 50-1, p. 31). The grievance is not an exact copy of the unnumbered grievance because Lyons marked different boxes as to the nature of the grievance (Compare Doc. 1, p. 34 with Doc. 50-1, p. 31). But the allegations in the summary of the grievance are nearly identical (*Id.*). The grievance lacks a response by the counselor, but the attached records indicate that it was reviewed by the grievance officer (Doc. 50-1, p. 29). On December 5, 2022, the grievance officer denied the

5

grievance because the grievance officer could not determine the issue within the summary of grievance (*Id.*). On December 8, 2022, the CAO concurred with the finding (*Id.*). Although Defendants maintain that the grievance was returned on December 9, 2022 (Doc. 50-3), the cumulative counseling summary notes that the grievance was forwarded through the mail on January 17, 2023 (Doc. 57-2, p. 11).

**November 28, 2022 Grievance:** After his transfer to Menard, Lyons sent a grievance directly to the ARB (Doc. 57-1, pp. 2-3). Lyons noted that he filed grievances while at Lawrence but never received responses (*Id.* at p. 2). He failed to explain the content of each grievance, but stated that the current grievance was a continuance of the grievances he previously filed. He also alleged that he was denied access to grievances, the grievance box, and writing materials from September through November 2022 (*Id.* at p. 3). He also alleged that he was inappropriately placed in segregation and denied access to the yard and mental health services while at both prisons (*Id.*). On November 30, 2022, the ARB received the grievance (*Id.* at p. 1). On December 2, 2022, the ARB returned the grievance noting that Lyons needed to provide the counselor and grievance officer responses (*Id.*). The ARB also directed Lyons to obtain responses from his current facility and resubmit them to the ARB (*Id.*).

## B. Summary Judgment Motion

In their motion for summary judgment, Defendants argue that Lyons failed to fully exhaust his administrative remedies because he failed to submit his grievances to the Administrative Review Board ("ARB") after receiving them back from grievance officials at Lawrence (Doc. 50). Lyons argues in his response (Doc. 53) that he was thwarted in his attempts to grieve his claims because he never received the responses after his transfer and could not appeal them to the ARB. He notes that he transferred to Menard Correctional Center before his grievances were ruled on by grievance officials at Lawrence. Lyons's transfer records note that on October 22, 2022, he transferred from Lawrence to Menard (Doc. 50-4, p. 1). Lyons argues that he spoke to a correctional

6

counselor at Menard in November 2022 about obtaining his grievances from Lawrence, but the counselor failed to forward them (Doc. 53, p. 2).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Lyons was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

8

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the [CAO] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board

9

and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Lyons argues that he was thwarted in exhausting his grievances related to this case when he failed to receive them back after his transfer.[5] *Ross v. Blake*, 578 U.S. 632, 644

---

[5] To the extent that Defendants argue Lyons failed to comply with SDIL Local Rule 56.1 and thus their factual statement should be deemed admitted, that request is **DENIED**. Lyons notes in two affidavits (Docs. 58, 59) that he had never filed a response to a summary judgment before and,

10

(2016) (Administrative remedies can be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process."). *See also Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A transfer can make the grievance process unavailable if the change in location ends access to the grievance process. *Flourney v. Schomig*, 152 F. App'x 535, 538 (7th Cir. 2005). But the Seventh Circuit noted that when the change in prisons does not change the next step in the process, then the grievance process is still available. *Id*. In *Flourney*, the inmate had received his responses, and his next step was to appeal to the ARB; thus, his transfer did not affect his ability to further pursue his grievance. *Id*.

But here, Defendants offer conflicting evidence as to when the grievances were returned. In their initial brief, they point to a chart, arguing that the grievances were returned in October and December 2022 (Doc. 50-3). Although Defendants contend that the chart demonstrates the return of Lyons's grievances, they failed to authenticate the chart and the page identifying the grievances only includes the date of receipt of the grievances (Doc. 50-3, pp. 2-4). Additional pages of the chart note grievance returns but fail to link a specific grievance with those dates (*Id*. at pp. 6-9). Defendants state that the grievances were returned to Lyons on October 27, 2022, and December 9, 2022 (Doc. 50-3), but the Court is unable to verify that Lyons's listed grievances were returned on a

---

although he read the instructions provided with the summary judgment, he still did not understand how to properly comply with Rule 56.1. Lyons is proceeding *pro se* and clearly filed his response to the best of his abilities. Thus, to the extent that Defendants seek to have their facts deemed admitted and decline to admit Lyons's additional facts, their request is **DENIED**.

11

specific date. Further, Defendants' reply brief offers a conflicting document in the cumulative counseling summary. The cumulative counseling summary includes entries seeming to indicate that the grievances were returned to Lyons through the mail on January 17, 2023 (Doc. 57-2, pp. 10-11). Thus, Defendants' arguments and evidence are contradictory, and they fail to establish when the grievances were returned to Lyons.

Further, none of the defense's exhibits establishes that Lyons received the returned grievances. Defendants only claim that they were sent to Lyons through the mail, but there is simply no evidence in the record establishing that the grievances were received at Menard or delivered to Lyons. Instead, Defendants argue that Lyons was not vigilant in seeking information about his grievances, noting that the cumulative counseling summary was absent of inquiries from Lyons as to the status of his grievances (Doc. 57, p. 2). But Lyons filed a grievance directly with the ARB, noting that he had not received responses (Doc. 57-1, pp. 2-3). Defendants also argue that Lyons was simply impatient and filed his suit prematurely rather than wait for the grievances to be returned (Doc. 57, p. 3). Lyons waited to file his Complaint until January 16, 2024, however, almost *a year* after the grievances were purportedly mailed to him (Doc. 1).

There is simply nothing in the record that demonstrates Lyons received his grievances from Lawrence. Exhaustion is an affirmative defense, and Defendants bear the burden of proof. *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008). In order to meet their burden, Defendants ordinarily must offer evidence to demonstrate that a plaintiff failed to exhaust his administrative remedies, often by offering grievance records, counseling summaries, and affidavits explaining the grievance procedure at the prison.

12

*Daniels v. Prentice*, 741 F. App'x 342, 343-44 (7th Cir. 2018). Although Defendants offered grievances, they have failed to offer any evidence demonstrating that Lyons received the grievances at Menard and simply failed to submit them to the ARB.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment on the issue of administrative exhaustion (Docs. 49, 50) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: June 16, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**